## Baltimore & O. S. W. Ry. Co. v. William U. Pletz, Administrator of Alice Pletz.

1. INSTRUCTIONS—*Must be Based upon the Evidence.*— Where it appears that the deceased (a minor child) did not use such care as an ordinarily prudent adult person probably would have used, there is nothing upon which to base an instruction that if the jury believe from the evidence that the deceased at the time of receiving the injury " was in the exercise of as high a degree of care and caution for her own safety as an ordinarily prudent adult person would have used under all the facts, circumstances and surroundings shown by the evidence, then it is not material in the determination of the issues in the case whether the parents were negligent concerning her safety or not."

2. SAME—*Improperly Limiting the Time of an Inquiry.*—An instruction upon the question of the use of ordinary care which limits the consideration of the jury to " the time of receiving the injury " is improper; the rights of the parties can not be fairly treated without taking into account all the circumstances.

3. TRESPASSERS—*Duty of Railroads Toward.*—While a person trespassing upon the track is not for that reason to be injured willfully or recklessly, yet the employes owe no duty to such person. If they do their work in the usual and customary way, and as is ordinarily safe and proper for the place they are in, where inexperienced or unwary persons are not supposed to be, negligence can not be predicated upon such action.

4. IMPUTABLE NEGLIGENCE—*Where the Rule Applies.*—Where parents are guilty of a want of care in sending or permitting a child of eleven years of age to go to a mine to pick up coal, and in so going, such child is obliged to cross a railroad track at a dangerous place, not a public crossing, such want of care must be imputed to the child and will bar a recovery by the administrator when suing for the benefit of the next of kin.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed November 15, 1895.

JOHN G. DRENNAN and ANDREW J. LESTER, attorneys for appellant.

S. H. CUMMINS and CONNOLLY & MATHER, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of $1,300 in favor of the administrator of Alice Pletz, deceased, for negligently causing her death as alleged. The deceased was about eleven years of age. She lived with her parents on Monroe street, a short distance east of East Grand avenue in Springfield. The railroad track is laid along said avenue, which runs north and south. Monroe street runs east and west, but does not cross the avenue, stopping at the west line thereof. On the east side of the avenue, and beyond the city limits, a coal mine is located, which is connected with the main track of the appellant by a side track. The shaft and superstructure of this mine are partly, not entirely, opposite the east end of Monroe street where it abuts the avenue.

There is no wagon or other public crossing over the avenue at this point, but there is a cinder walk which is used when there is occasion by those who wish to pass to and fro, between the coal mine and Monroe street. On the day in question the deceased had gone across the tracks to the coal mine for the purpose of picking up coal. She had frequently done this before against the wish of the " boss " at the mine, and on this occasion it seems that he saw her and her companions, girls of about the same age, who were there for the same purpose, and by some word or gesture warned her and them to go away. They passed around the chute and lingered a few moments watching for him, and finally started to go across the tracks homeward. While they were thus about the shaft an engine of the appellant was switching cars on the main and side tracks, and in the course of doing so had taken some loaded coal cars off the switch track and had " kicked " them down the main

track.   Just about the time this was done the girls started to go around the north end of a string of empty box cars standing on the main track, and one of them said " Look out, the cars are coming."

This remark was induced by the noise of the cars bumping together, which bumping was caused by the loaded coal cars striking against the south end of the string of empty cars.

The girls all sprang to get across, and all succeeded except deceased, who was caught on the west rail, and suffered such injuries that she died a few days later.

It is urged in support of this judgment that the appellant was negligent in not giving signals of the approach of these cars and in the reckless manner in which the loaded cars were " kicked " against the empties, and in permitting the latter to stand on the supposed crossing longer than was permitted by ordinance.

As already stated, there was no crossing at this point aside from the cinder walk for the convenience of those who had occasion to be about the mine.   Certainly it was not such a crossing as was contemplated by the ordinances offered in evidence, nor such as to make it necessary to give signals of an approaching car or train under the ordinance.

If such signals were necessary for any special reason, as the presence, known or presumed, of persons who might be in danger without such warning, that would be a matter aside from the ordinance.   In this particular instance the deceased and those with her had warning that the cars were coming—they heard the noise—and the giving of signals (if, indeed, none were given) would have added nothing to their information.

They attempted to cross by going around and very near the end of the car which was then still, but which they knew would bound forward very soon, a most dangerous thing to do under the circumstances, and this inconsiderate and careless act, was the proximate cause of the injury to the deceased.

Perhaps she used as much care for her own safety as might usually be expected of a person of her years, but we have no hesitation in saying she did not use such care as an ordinarily prudent adult should or probably would have used. Hence, we think there was nothing upon which to predicate the following instruction given at the instance of the plaintiff:

"The court further instructs the jury that if you believe from the evidence in this case that the deceased, Alice Pletz, at the time of receiving the injury charged in the declaration, was in the exercise of as high a degree of care and caution for her own safety as an ordinarily prudent adult person would have used under all the facts, circumstances and surroundings shown by the evidence in this case, then it is not material in the determination of the issues in this case whether the parents were negligent concerning her safety or not."

As was held in the case of C. C. Ry. Co. v. Robinson, Admx., 127 Ill. 9, "where the conduct of an infant would not be negligence in an adult, the question of imputable negligence is immaterial;" but as we view the evidence in this record, it is a matter of substantial complaint that an instruction should assume there was sufficient proof that the deceased used such a degree of care. This assumption appears also in a modification of an instruction asked by appellant, and elsewhere in the series.

The instruction also limits the consideration of the jury to "the time of receiving the injury."

The rights of the parties can not be fairly treated without taking into account all the circumstances.

Why was the deceased there? and if she was not of mature judgment, was it negligence in her parents to send her there? are questions which naturally arise. Even if it could be supposed that at the moment of receiving the injury she used ordinary care for an adult, yet was there not great negligence and want of care in being at such a place of danger? Evidently she did not realize the peril or had become accustomed to it.

Certainly it was a very dangerous place for a child of tender years. It would be difficult to conceive a more hazardous errand for such a child. Cars were frequently being switched back and forth. Danger was apparent and unavoidable. Nor was she there by invitation. On the contrary, as she, and presumably her parents, well knew, the mining boss had repeatedly ordered her away. It appears that on that morning one of the chutes had got out of order and a quantity of coal had fallen to the ground, and this fact being known had especially attracted these girls there on that occasion.

Whether the coal company objected to losing the coal the children would ordinarily pick up and carry away, or as is more probable, to the annoyance and danger of their coming and being about, is not shown, but it is certain that the objection was well known.

The deceased was, therefore, a trespasser, and while for that reason she was not to be injured willfully or recklessly, the railroad employes were not required to know or presume she was there, and if they did not know it, in fact, they owed no duty to her. Hence, if they did their work in the usual and customary way, and as is ordinarily safe and proper for such a place, where inexperienced or unwary persons are not supposed to be, negligence is not to be predicated upon their action. Admitting for the sake of argument that the train men were negligent and that they knew, or had reason to suppose, the deceased was there and liable to be injured by their negligence, we think the doctrine of imputable negligence is to be applied, and if her parents were guilty of a want of due care in sending or permitting her to go to the mine for the purpose as stated, such want of care must be imputed to her, and bar a recovery.

She would be so barred, as the law is held in this State, had she survived the injury and sued on her own account, and necessarily, her administrator, when suing for the benefit of the next of kin must be barred also. However, the doctrine may be criticised as inequitable when the infant is the plaintiff, no such objection can be urged when the adminis-

trator sues for the benefit mainly of those whose negligence was the proximate cause of the injury and loss of life.

We do not understand that the trial court refused to apply the doctrine of imputable negligence, but that the jury were permitted to understand that the court held there was such evidence of ordinary care from an adult standpoint, as to make it unnecessary to consider any supposable negligence of the parents. We think the court should have taken the responsibility of holding that there was no evidence upon which to predicate such an instruction and that the doctrine of imputable negligence should have been applied without qualification.

The judgment will be reversed and the cause remanded.