# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

VIRGINIA ELECTRIC AND POWER COMPANY, A CORPORATION,
AND K. C. JAMES V. JAMES B. DECATUR, ADMINISTRATOR.

June 12, 1939.

Record No. 2067.

Present, All the Justices.

The opinion states the case.

*T. Justin Moore* and *Leigh D. Williams,* for the plaintiffs in error.

*W. M. Phipps, H. M. Woodward* and *J. R. Davis,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by the administrator of C. D. Smith against the corporation and its employee to recover damages as a result of a collision between a bus of the defendant and an automobile of which the decedent was an occupant. There was a trial by a jury which resulted in a verdict in favor of the plaintiff, and judgment was entered thereon by the court.

As it is conceded by the defendants that the evidence adduced by the plaintiff upon the trial of the case is sufficient to support the verdict, it is unnecessary to review it at length.

The accident occurred at approximately 9:30 A. M., at the intersection of Ballentine Boulevard and Princess Anne Road in the City of Norfolk, and resulted in the death of the three occupants of the automobile, namely, Smith, Sears and Walters.

The notice of motion alleges that Sears was the driver of the automobile and that James was the driver of the corporation's bus; that due to the negligence of James, and through no fault of Sears, the accident occurred. As stated, evidence to sustain the allegation of the notice was submitted to the jury, and the verdict should be upheld unless the court committed error prejudicial to the defendants.

To sustain the plea of not guilty, defendants alleged that Smith was the actual driver of the automobile and interposed the defense of contributory negligence upon the part of plaintiff's decedent. In support of that plea, it was shown by the proof that on Saturday night preceding the accident Smith, Sears and Walters were at a roadhouse located in North Carolina, approximately thirty-two miles from Norfolk; that they remained at the roadhouse practically the entire night, leaving at four o'clock A. M.; that at the time of departure, Smith was so intoxicated that he had to be carried to the automobile; that Walters was likewise intoxicated, but that up to the time of leaving the roadhouse Sears only drank two bottles of beer; that the three occupants of the car proceeded to Norfolk, arriving there between 6:30 and 7:00 A. M. Sunday morning; that later on they went to Rowe's Tavern, east of Lynnhaven Inlet, and procured food, and each one took two drinks of whiskey while there; that after backing the car into a tree, they left Rowe's Tavern and proceeded to Mann's Place located at Ocean Park; that after the accident a broken whiskey bottle was found in the automobile, as well as a pint bottle with a small portion of corn whiskey in it; that after the accident Walters was found in the back seat and the other two men were in the front seat, their relative positions being in dispute.

In order to show that Smith, in an alleged intoxicated condition was the driver of the automobile at the moment of the impact (instead of Sears), and that he was guilty of contributory negligence, the defendants introduced as a witness R. H. Houston, an officer connected with the Norfolk Police Department. Without objection, Houston detailed what he observed at the scene of the accident. He stated that when he arrived, Walters was dead, and that he sent Smith and Sears to a hospital. He also stated that after his visit to the scene of the accident he went to the hospital, but did not interview Sears, as he was in an unconscious condition; that it was with difficulty he talked to Smith, as he was severely injured; that Smith told him his name (giv-

ing his initials), where he lived, near Moyock, North Carolina; told him the name of Mrs. Smith; told him that his son had been killed in an automobile accident and that from money received therefrom he had purchased the automobile involved in the collision. Houston then stated, "I ascertained from him that he was driving the car."

Counsel for the plaintiff objected to this last statement, and moved the court to strike it from the record on two grounds—the first, that the two attending doctors had testified in regard to Smith's condition; that Dr. Judson stated that when Smith arrived at the hospital he was conscious in that he could talk when he was brought in but that he had definite signs of brain injury and that he was of the impression that he was unable to talk intelligently at the time the alleged statement was made. Dr. Saunders stated that it was his opinion that Smith was not in a condition to answer questions intelligently that morning. The second ground relied upon was that Smith was not a party to this action and any statement made by him is hearsay evidence.

In sustaining the motion to strike out the evidence of Houston, the court said:

"Gentlemen, counsel for the defendant has asked this witness a question calling for an answer as to a statement by Mr. Smith, the deceased, as to whether he or Sears was driving the car at the time of the accident. That question has been objected to by counsel for the plaintiff. In view of the testimony of Dr. Judson and the testimony of Dr. Saunders as to the mental condition of Smith on the day of the accident, I have decided not to allow the question. The witness started to answer the question, and such part of the answer as you gentlemen have heard is to be disregarded. I strike that out for the reasons stated."

This ruling of the court is assigned as error.

To sustain the action of the court, plaintiff relies upon the cases of *Kwiatkowski* v. *John Lowry, Inc.,* 276 N. Y. 126, 11 N. E. (2d) 563, 114 A. L. R. 916; *Davidson Benedict Co.* v. *Severson,* 109 Tenn. 572, 72 S. W. 967; *Middle Tennessee Railroad Co.* v. *McMillan,* 134 Tenn. 490, 184 S. W.

20; *Helman* v. *Pittsburg, C., C. & St. Louis Ry. Co.,* 58 Ohio St. 400, 50 N. E. 986, 41 L. R. A. 860.

Those cases afford support for the contention that the statutory right of action for death by wrongful act is merely a continuance of the right existing in the injured party. To support the argument that under the provision of the Code, section 5786, the right of action created by the statute is not the same right of action as that vested in the injured party, the case of *Anderson* v. *Hygeia Hotel Co.,* 92 Va. 687, 691, 24 S. E. 269, is relied upon. That case was followed in *Beavers' Adm'x* v. *Putnam's Curator,* 110 Va. 713, 67 S. E. 353; and *Virginia Iron, etc., Co.* v. *Odle's Adm'r,* 128 Va. 280, 105 S. E. 107.

An examination of the case of *Brammer's Adm'r* v. *Norfolk & W. Ry. Co.,* 107 Va. 206, 57 S. E. 593, discloses that counsel have misconstrued the case of *Anderson* v. *Hygeia Hotel Co., supra,* and the cited cases are not in point.

In support of the assignment of error, defendants have cited a number of cases from various States which deal with statutes similar to our statute. In the list cited is *Lord* v. *Pueblo Smelting & Refining Co.,* 12 Colo. 390, 21 P. 148, 151; *Brice* v. *Atlantic Coast Electric R. Co.,* 102 N. J. L. 288, 132 A. 253; *Hovey* v. *See* (Tex. Civ. App.), 191 S. W. 606; *Reed* v. *Philpot's Adm'r,* 235 Ky. 429, 31 S. W. (2d) 709; *Dixon* v. *Union Ironworks,* 90 Minn. 492, 97 N. W. 375; *Georgia Railroad & Banking Co.* v. *Fitzgerald,* 108 Ga. 507, 34 S. E. 316, 49 L. R. A. 175.

The cases relied upon support the contention of defendants. However, a lengthy review of the cases cited and quotations therefrom would prove unprofitable, since the legal tape by which the case at bar is to be measured is a proper construction of section 5786 of the Code of 1936. The pertinent provision of the section which alone confers upon an administrator a right of action is as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect or default of any person or corporation, or of any ship or vessel, and the act, neglect or default

is such as would (if death had not ensued) have entitled the party injured to maintain an action," etc.

■ At common law the right of action to recover damages for "wrongful death" was unknown. This situation existed in Virginia until January 14, 1871, when the original act giving such a right to a personal representative was enacted. The prototype of this act is the English statute known as "Lord Campbell's Act," which was passed in 1846.

In *Brammer's Adm'r* v. *Norfolk & W. Ry. Co.*, 107 Va. 206, 57 S. E. 593, section 2902 (now section 5786), was construed by Judge Cardwell. There we read:

"Where the action brought by the injured party in his lifetime is revived in the name of his administrator, after his death, or the action is brought under the statute after his death, the issue in either case is the same, the right of recovery resting upon the same set of facts, namely, the injuries resulting in death being caused by the wrongful act, neglect or default of the defendant. The plain meaning and intent of the statute, construing the sections which have been referred to together, as appears to us, to preserve a right of action, which, theretofore, would have been lost, where the injured party died after or before he had brought an action to recover damages for the wrongful act, neglect or default of another person or corporation, etc."

■ Under this construction there is but one logical conclusion to be drawn, and that is, that the cause of action of the injured party, while alive, is the same cause of action that passes to the personal representative. It is thus seen that the right of the personal representative to recover for the death of his decedent stands upon no higher ground than that occupied by the injured party while living. That this is true is evidenced by the virtual holding in *Brammer's Adm'r* v. *Norfolk & W. Ry. Co., supra.* In that case we again read:

"In *Spiva* v. *Osage, etc., Co.*, 88 Mo. 68, an action for the wrongful death of plaintiff's intestate, the court said: 'The right of action accruing to the widow under the statute, is such as would have existed in the husband's favor if death

had not ensued, and none other, and as we hold the husband could not, under the evidence, have maintained the action if he had survived the accident, a recovery must be denied plaintiff upon the same ground.'

"In *Kauffman, Adm'r* v. *Cleveland, etc., Ry. Co.*, 144 Ind. 456, 43 N. E. 446, another action for the wrongful death of plaintiff's intestate, it is said: 'Such an action as this is merely statutory, and the statute that authorizes it does so upon the condition that the facts are such that the deceased might have maintained the action had he lived, for the injury resulting from the same act or omission.'

"In *Baltimore & O. S. W. Ry. Co.* v. *Pletz*, 61 Ill. App. 161, the opinion of the court reversing a judgment in favor of the administrator, for the wrongful death of his intestate, upon the ground that the intestate had been guilty of contributory negligence, says: 'She (the injured party) would be so barred, as the law is held in this state, had she survived the injury and sued on her own account, and necessarily her administrator, when suing for the benefit of the next of kin, must be barred also.'"

Our conclusion is further buttressed by an illuminating discussion in 15 Virginia Law Register, 829, engaged in by Professor Charles A. Graves, who has this to say:

"*When no action for death.* In construing section 2902, above, attention must be paid to the words, 'and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action * * *, and to recover damages in respect thereof.' On this condition, the 'person who would have been liable if death had not ensued, shall be liable in an action for damages notwithstanding the death of the person injured, and although the death may have been caused under such circumstances as amount in law to a felony.'

"Suppose the deceased, for whose death the action is brought, was guilty of contributory negligence. Then as the act, neglect or default of the defendant is not 'such as would (if death had not ensued) have entitled the injured party to maintain an action,' no action can be brought un-

der the statute by his administrator to recover damages on behalf of the beneficiaries who would otherwise have been entitled. *Chesapeake, etc., R. Co.* v. *Rogers' Adm'x,* 100 Va. 324 (41 S. E. 732) ; *Norfolk, etc., R. Co.* v. *Cheatwood's Adm'x,* 103 Va. 356 (49 S. E. 489) ; *Brammer's Adm'r* v. *Norfolk, etc., R. Co.,* 104 Va. 50 (51 S. E. 211) ; *Pendleton's Adm'r* v. *Richmond, etc., R. Co.,* 104 Va. 813 (52 S. E. 574) ; Cooley, section 150; Hutchinson, section 789b.''

In *Marks* v. *Portsmouth Corporation* (1937), 157 L. T. R. N. S. (Eng.) 261, Lord Campbell's Act was construed and this conclusion reached:

"Lord Campbell's Act gives a direct right of action to the dependents—no doubt a new statutory right. But it is essential to that right that the act, neglect or default shall be such as would have entitled the party injured to maintain an action and recover damages in respect thereof. It is material to see if the deceased could have maintained an action. That issue is the same whether he dies or not. If he dies, the dependents have to prove the affirmative of that issue. Statements made by him are admissible, and may be relevant upon that issue."

Since the rights of the parties have been fixed, let us now advert to the admissibility of the evidence stricken out. As we view it, there is no question that in an action brought by Smith the statement involving the driver of the automobile would have been admissible. The only theory upon which the action of the court can be sustained is the absolute acceptance of the evidence of the witnesses who testified as to the mental condition of Smith at the time the alleged statement was made. For the sake of the argument, we may concede that the evidenc of the medical experts is most persuasive, but that it is conclusive we are unable to concede. Houston occupies a most responsible position and so far he stands unimpeached. Whether Smith was guilty of contributory negligence was a question of vital importance to the defendants. Upon its determination the issue of liability depended. One witness prior to Houston had testified that Smith was under the driver's wheel im-

mediately after the accident. In substantiation of this evidence the statement of Houston, if believed by the jury, was of the utmost concern to the defendants. The admissibility of the evidence was for the court, but the credibility of the witnesses who testified in regard to the mental and physical condition of Smith at the time of the alleged statement, was fundamentally a question for the jury.

Our conclusion is that the court erred in striking out the evidence of Houston and that the assignment of error is well founded.

It is next assigned as error that the court erred in giving instruction number six for the plaintiff and refusing instruction number ten offered by the defendants. The instructions, in our opinion, correctly state the law, and there is no merit in this assignment of error.

Complaint is made of the alleged improper remarks of counsel for the plaintiff in his opening statement to the jury. The question raised has been repeatedly dealt with by this court and further comment is unnecessary, except to admonish counsel that within the record is the proper limitation of argument. Upon a new trial no such question should arise.

The judgment of the trial court will be reversed and the case remanded for a new trial.

*Reversed.*

HUDGINS, J., dissenting.

Two juries have passed upon the material evidence in this case. Each jury returned a verdict for plaintiff.

It appears that C. D. Smith, plaintiff's decedent, made two inconsistent statements as to who was driving the automobile in which he was riding at the time he received his fatal injuries. Defendant claims that on the day of the accident Smith informed policeman Houston that he was driving the car. Policeman Nowitzky testified that some two days after the accident Smith told him Sears was driving the car. On the first trial the court admitted in evi-

dence both of the declarations claimed to have been made by Smith, but later it sustained a motion to set aside the first verdict on the ground that Smith's statement to Nowitzky was a self-serving declaration and not admissible.

The proceedings of the trial now under review show that the trial court rejected or excluded from consideration of the jury both declarations, the one made to Nowitzky on the ground that it was self-serving, and the one made to Houston on the ground that Smith was not in full possession of his mental faculties at the time that it is claimed he made the statement to Houston. I do not think that the trial court committed reversible error in either ruling.

The uncontradicted evidence clearly shows that Smith was injured at 9:20 a. m. At ten o'clock he was admitted to the hospital. One doctor for plaintiff, and one doctor for defendant, found that he was suffering from a fracture of both thigh bones, terrible bruises and lacerations, a broken nose, a fractured skull and concussion of the brain. Both of these doctors testified that he was semi-conscious and not in a mental condition to give intelligent answers to questions. Nowitzky, a witness called by defendant, testified that he tried to talk to Smith before Smith was taken out of the operating room and found him unconscious. "If he was not unconscious, I could not get much out of him at the time I talked to him that day." He was in serious pain and groaning. As Nowitzky left the hospital he met officer Houston going in. Houston does not state whether he attempted to talk to Smith while he was still in the operating room or after he had been removed. At any rate, his interview with Smith took place before noon on the day of the accident and within a few minutes after Nowitzky had seen him. Houston does not attempt to quote the declaration he claims Smith made to him. His exact testimony was, "I talked to Smith. He was severely injured and I had some difficulty in talking to him as I had to ask a lot of questions. Of course he answered. I ascertained from him that he was driving the car."

A conflict in the evidence on the question of whether Smith was rational and in possession of his mental faculties at the time would present a jury question, but it is to be noted that not a single witness testified that Smith, at the time Houston obtained the information from him, was in possession of his mental faculties. The admissibility of this testimony was peculiarly a question addressed to the sound discretion of the trial court. We should not disturb its ruling on it, unless it is clearly shown that there has been an abuse of that discretion.

Under the circumstances, Smith, himself, would not have been a competent witness in any court. "It is too clear to call for discussion that liberty or property rights should not depend upon the testimony of those who are so wanting in understanding that they cannot remember or cannot form any conception of right and wrong." Jones on Evid., 2d Ed., vol. 5, page 3947.

In *Coleman* v. *Commonwealth*, 25 Gratt. (66 Va.) 865, 874, 18 Am. Rep. 711, Judge Bouldin, speaking for the court, said: "There can be no doubt, that the rule laid down by Peake in his work on Evidence, and approved by the Court of Errors of New York in the case of *Hartford* v. *Palmer*, 16 John. R. 143, is sound and reasonable, and is one, as said by the court in that case, 'which cannot fail to command the respect of all mankind'; to wit, 'that all persons who are examined as witnesses must be fully possessed of their understanding; that is, such understanding as enables them to retain in memory the events of which they have been witnesses, and gives them a knowledge of right and wrong; that, therefore, idiots and lunatics, whilst under the influence of their malady, not possessing their share of understanding, are excluded.'

" * * *. If at the time of his examination he has this share of understanding, he is competent. That is the test of competency, and of such competency the court is the judge; whilst the weight of testimony—the credit to be attached to it—is left to the jury."

In *State* v. *Berberick*, 38 Mont. 423, 100 P. 209, the question was whether or not a confession made by a prisoner who was accused of murder was admissible. Counsel for the accused objected to the admission of the confession on the ground that at the time it was made the accused was not in possession of his mental faculties. It was held that, if the accused was not competent to testify at the time he made the confession, the confession itself was not relevant evidence against him, and that it was the duty of the court to ascertain the mental condition of the accused at the time he made the statement, and if it was found that he was not then in full possession of his mental faculties, the confession should be rejected.

Wigmore, in his valuable work on Evidence, vol. 1, 2d Ed., page 915, in discussing the competency of a witness says that the capacity of communication has two aspects:

"(1) First, it involves a capacity *mentally to understand* the nature of questions put and to form and communicate intelligent answers. (2) Secondly, does it involve a sense of *moral responsibility,* of the duty to make the narration correspond to the recollection and knowledge, i. e. to speak the truth as he sees it? It would seem that the clear absence of such a sense would disqualify the witness. * * * .

"If it is asked further what shall be the standard by which this capacity to observe, recollect, and communicate is to be judged, the law is found very properly declining to lay down any more detailed rules. The trial court must determine this capacity. Any more restricted rule, however ingenious, would fail of its purpose, and would hamper rather than assist the process of procuring trustworthy testimony."

It is not claimed that Smith's declaration to Houston is admissible, either as a dying declaration or as a part of the *res gestae.* If admissible at all, it is admissible as a declaration against interest. The theory, upon which an admission or declaration against interest is admitted, is, as was said in *Burton* v. *Scott*, 3 Rand. (24 Va.) 399, "the reasonable presumption, that no person will make any declaration against his interest, unless it be founded in truth." If a person, at

the time it was claimed that he made such a declaration against interest, is not in possession of his mental faculties as will enable him to understand the nature of the question or to intelligently formulate his answer, the presumption is removed and a declaration made under such circumstances has no probative value, and tends to confuse rather than aid the jury in determining the truth of the matter.

"It is well settled that evidence of *verbal admissions* ought to be received with great caution because of the liability of witnesses to mistake or misunderstand the admission when made, and to remember inaccurately or misrepresent it afterwards. *Horner* v. *Speed*, 2 Pat. & H. 616; 1 Green. on Evidence, sec. 200 (Redfield's Ed.)

"If this be the rule where the verbal admission is to affect the party or person who made it, it ought to apply with greater force where it is to affect the rights of another." *Metropolitan Life Ins. Co.* v. *O'Grady*, 115 Va. 830, 80 S. E. 743.

I think the evidence conclusively establishes the fact that Smith, at the time Houston questioned him, did not possess such an understanding as enabled him to retain in memory the events concerning which he was then questioned. But, if I am wrong in this conclusion, then it can not be gainsaid that the circumstances disclosed by this record, under which it is claimed Smith made the declaration to Houston, are such as to create serious and substantial doubt as to the probative value of anything that he may have said on that occasion.

There are some authorities which hold that an admission or declaration against interest does not render conflicting self-serving declarations admissible. There are a number of others that hold that, under such circumstances, self-serving declarations of a decedent are admissible. Under the facts of this case I think that if the declarations of the decedent made to Houston are admissible, then the inconsistent declarations of the decedent to Nowitzky should also be admitted, as it is conceded that his mental condition was then normal. This principle is supported by the following

authorities: *Gordon* v. *Munn*, 87 Kan. 624, 125 P. 1, 88 Kan. 72, 127 P. 764, Ann. Cas. 1914A, 783; *Cooper* v. *Bower*, 78 Kan. 156, 96 P. 59; *Cannon* v. *Baker*, 97 S. C. 116, 81 S. E. 478.

We have said in a number of cases that "no record is perfect. This case has been twice tried and should not be retried unless justice plainly demands it." *Oliver* v. *Commonwealth*, 151 Va. 533, 541, 145 S. E. 307; *Woody* v. *Abrams*, 160 Va. 683, 695, 169 S. E. 915; *Parsons* v. *Commonwealth*, 154 Va. 832, 152 S. E. 547; *Waynick* v. *Walrond*, 155 Va. 400, 154 S. E. 522.

One jury tried this case when the declaration against interest made to Smith and the inconsistent self-serving declaration made to Nowitzky were admitted for its consideration. That jury returned a verdict for plaintiff in the sum of $6,000. The jury on the second trial, with both declarations excluded from its consideration, returned a verdict for plaintiff in the sum of $8,500. There is ample evidence to support this verdict.

I am firm in my opinion that the judgment of the trial court should be sustained.