**Charles B. BEVERAGE, Jr., Administrator of the Estate of Gwendolyn Hicks, Deceased, Appellant,**

**v.**

**Fred Douglas HARVEY, Appellee.**

**No. 78–1786.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1979.

Decided July 31, 1979.

Thomas W. Williamson, Jr. and Emanuel Emroch, Richmond, Va. (Emanuel Emroch and Associates, Richmond, Va., on brief), for appellant.

J. W. Morris, III, Richmond, Va. (R. Hunter Manson, Browder, Russell, Little, Morris & Butcher, Richmond, Va., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

This action was brought on December 1, 1977, under the Virginia wrongful death statute, on behalf of the infant daughter of Gwendolyn Hicks. Gwendolyn Hicks, a passenger in a car driven by defendant, was injured in a motor vehicle collision (which occurred in Virginia on August 21, 1975) and died the next day. The action is obviously barred by the statute of limitations [1] unless plaintiff can establish its theory of estoppel.

As early as September 19, 1975, one Benjamin M. Zelman, Esquire, of New York City was active in asserting the Hicks claim. Another passenger in defendant's car, one John D. Edmonds, had also been killed, and that case was settled for $19,000 from defendant's insurer plus $5,000 from the insurer of the other vehicle.

During the two years following the accident, Zelman discussed the case with representatives of defendant's insurer, including Carson E. Hamlett, the claims manager handling the Hicks claim, on approximately ten occasions. In May of 1976, Hamlett offered Zelman $15,000 to settle the claim. Zelman never accepted this offer, and consistently demanded both a larger offer from

Hamlett and a contribution from the second driver's insurer. Zelman eventually decided to recommend a settlement consisting of $19,000 from defendant's insurer and an unspecified amount from the other insurance company. On August 12, 1977, he wrote to Hamlett, saying "I trust that my proposal and suggestion will be accepted by you so that I can proceed to convince the other side, if possible, that the matter should be disposed of by an amicable agreement."

Hamlett did not respond to Zelman's letter until September 6, 1977. On that date, he wrote to Zelman informing him that "unless you have instituted suit prior to August 21, 1977, the statue of limitations have run" [sic] and adding "You of course rejected our offer of $15,000.00 when you made a counter-offer of $19,000.00. Since it appears the statue of limitations have run [sic], all offers we have previously made to you on the case are withdrawn." Zelman testified that he had not investigated the question of tolling the Virginia statute of limitations on account of infancy, but had formed the impression that Virginia law was substantially the same as New York law where the statute is tolled.

■ Appellant argues in this appeal that the statute of limitations is tolled by reason of infancy on the part of the beneficiary of the wrongful death action, relying upon Va.Code § 8–30 (1957). That provision applies only to the infancy of the "person to whom the right accrues to bring any such personal action;" but in the case of a wrongful death action Va.Code § 8–634 provided that "every such action shall be brought by and in the name of the personal representative of such deceased person," not by or in the name of the infant benefi-

---

* Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. Va.Code § 8–633 (Supp.1976), in force at the time of the collision, provided that "Every action under this [wrongful death] section shall be brought within two years after the death of

the injured person, notwithstanding the provision of Section 8–24." The present language in Va.Code § 8.01–244B (1977) reads: "Every action under § 8.01–50 [present codification of wrongful death statute] shall be brought by the personal representative of the decedent within two years after the death of the injured person."

ciary.[2] Since the infant's disability thus does not prevent the timely institution of a wrongful death action, there is no occasion to toll the statute of limitations in such actions because of the beneficiary's infancy.

Appellant's case must stand or fall upon its alternative contention that defendant's insurer is estopped from asserting the statute of limitations because it lulled Zelman into a false sense of security and prevented him from filing a timely action. Review of the record supports the findings of the trial court that grounds for estoppel have not been established. It seems clear that Zelman's desire to avoid court costs and splitting his fee with local counsel, as well as his impression that infancy tolled the statute, dictated his failure to file suit in timely fashion, rather than any misleading acts of defendant's insurer.

The trial court reviewed the six elements of estoppel set forth in *American Mutual Liability Ins. Co. v. Hamilton*, 145 Va. 391, 135 S.E. 21 (1926), and correctly found that appellant had not established the requisite conditions for estoppel to arise.[3]

The only wrongdoing laid to the charge of defendant's insurer is delaying until September 6, 1977, its response to Zelman's letter of August 12, 1977, demanding $19,000 rather than accepting the insurer's prior offer of $15,000. Whether this delay was due to accumulation of business during Carson E. Hamlett's vacation, or to intentional desire to see whether Zelman would let the statutory period elapse without filing suit, the circumstance itself might have seemed suspicious to alert counsel; and in any event Hamlett was not legally required to answer his mail on the day he received it, even if that was his customary practice.

For equitable estoppel to be available as a defense, *American Mutual* requires a representation or concealment of material fact. As the trial court found, "This was not the concealment of a material fact. In the first place, a statute of limitations is not a fact; it is a law. In the second place, Hamlett's silence was not a concealment. The Virginia statute of limitations for wrongful death actions is clearly written into the statute itself. Hamlett could not conceal the statute of limitations from Zelman by silence. It is self evident that even the slightest research would have apprised Zelman of it."

With regard to the second requisite of estoppel (that the representation or concealment must have been with knowledge of the true state of facts) the trial court found: "It is not denied that Hamlett knew the statute was about to run but had no knowledge of Zelman's ignorance of the law, nor did he have a duty to educate counsel for claimant."

With regard to the third element (that the party to whom it was made must be ignorant of the truth of the matter represented or concealed) the trial court found: "Zelman was ignorant of the statute of limitations but this ignorance was not a

---

**2.** It is settled law in Virginia as in most States that the right of action for wrongful death did not exist at common law but is a purely statutory creation. *Anderson v. Hygeia*, 92 Va. 687, 691, 24 S.E. 269 (1896); *Beavers v. Putnam*, 110 Va. 713, 67 S.E. 353 (1910); *Virginia Iron, etc. Co. v. Odle's Adm'r.*, 128 Va. 280, 308–10, 105 S.E. 107 (1920); *Virginia E. & P. Co. v. Decatur*, 173 Va. 153, 3 S.E.2d 172 (1939); *Wilson v. Whittaker, Adm'r.*, 207 Va. 1032, 1035–37, 154 S.E.2d 124 (1967); *Grady v. Irvine*, 254 F.2d 224, 226–28 (4th Cir. 1958); 5 b *Michie's Jurisprudence*, Death by Wrongful Act, p. 511. We are not convinced that there is any likelihood that the Supreme Court of Virginia would reverse this settled doctrine, as Massachusetts and Illinois have done. *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972); *Wilbon v. D. F. Bast Co., Inc.*, 73 Ill.2d 58, 22 Ill.Dec. 394,

382 N.E.2d 784 (Ill.1978). See also *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Even if the innovative theory is historically sound [See Holdsworth, *A History of English Law* (1927) III, 331–361], the situation is governed by the maxim *communis error facit jus*.

**3.** Hence we do not pause to investigate the interesting but unsettled question whether in Virginia estoppel may be used to defeat a statute of limitations which is embodied as a condition of the right itself as well as one which relates merely to remedy. See *Branch v. Branch*, 172 Va. 413, 2 S.E.2d 327 (1939); and *Barksdale v. H. O. Engen, Inc.*, 218 Va. 496, 237 S.E.2d 794 (1977).

**660**

result of Hamlett's silence. It was a result of Zelman's incredible failure to read and understand the clear language of Virginia's wrongful death statute."

As to the fourth requirement (that the representation or concealment must have been made with the intention that the other party should act on it) the trial court found: "It is true that Hamlett hoped that Zelman, would let the statute of limitations run so that his failure to apprise Zelman of it was to that extent intentional."

On the fifth element (that the representation or concealment must have induced the other party to act) the trial court found that: "Hamlett's action in no way could have induced Zelman to do anything unless Zelman was expecting Hamlett to apprise him of the appropriate statute of limitations, a clearly unreasonable expectation on the part of any attorney."

As to the final requirement for estoppel (that the party asserting estoppel must have been misled to his injury), the trial court found: "The plaintiff has indeed been injured here. However, Zelman was not misled by Hamlett as no representation was made to Zelman concerning the statute of limitations. No concealment could have been effected by Hamlett concerning the statute of limitation since it is clearly and publicly set out in the Code of Virginia. And professions of hope concerning the possibility of settlement are not representations that there will be a settlement."

It thus seems clear that estoppel has not been adequately established. Defendant's insurer neither requested nor induced appellant to refrain from filing suit. Mere "masterly inactivity" in failing to respond promptly to Zelman's counter-offer or demand for $19,000 did not mislead Zelman to appellant's detriment. Zelman's acts were in every respect voluntary and motivated by his own purposes.

Accordingly the judgment of the District Court is affirmed.