**Clinton W. LOVE, Sr., and Rose Mary Love, husband and wife, Plaintiffs–Appellants,**

v.

**UNITED STATES of America; United States Department of Agriculture; Farmers Home Administration; Philip A. Young; Claude Hargrove; Arthur E. Lung; Theodore Hebnes; Roger Meredith; Rodger Vanvalkenburg; Dale Gilbert; Jim Walker; Stanley Faught, and Gilbert L. Anderson, Defendants–Appellees.**

**No. 87–3832.**

United States Court of Appeals,
Ninth Circuit.

Sept. 18, 1991.

Robert M. Kampfer, Gene A. Picotte, P.C., Clancy, Mont., for plaintiffs-appellants.

Robert J. Brooks, Asst. U.S. Atty., Great Falls, Mont., for defendants-appellees.

Before FLETCHER and D.W. NELSON, Circuit Judges, and CARROLL*, District Judge.

## ORDER

Circuit Judges Fletcher and Nelson have voted to deny the petition for rehearing, and to deny the petition for rehearing en banc. District Judge Carroll voted to

---

* Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

grant the petition for rehearing and petition for rehearing en banc.

On the request of a judge in regular active service, the suggestion for rehearing en banc was put to a vote of the full court, and the majority of the court voted to deny rehearing. Fed.R.App.P. 35(b). Circuit Judge O'Scannlain dissented from the denial of rehearing and was joined by Circuit Judges Poole, Norris, Hall and Kozinski. The dissent is filed as an attachment to this order.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected. The mandate shall issue forthwith.

O'SCANNLAIN, Circuit Judge, with whom POOLE, WILLIAM A. NORRIS, CYNTHIA HOLCOMB HALL, and KOZINSKI, Circuit Judges, join, dissenting:

By denying rehearing, a majority of this court has effectively determined that the following proposition is legally sound: the federal government may be held liable for tort damages under state law for the breach of duties that arise solely as a matter of federal contract law. Because this proposition offends the Supremacy Clause, eviscerates the Tucker Act, intrudes upon the exclusive jurisdiction of the Claims Court, allows the states to override federal sovereign immunity, will expand the already crowded docket of this court, will improperly reduce the availability of federal aid, and controverts every first-year law student's basic understanding of the difference between contracts and torts, I respectfully dissent.

I

The Loves are Montana farmers who obtained agricultural loans from the Farmers Home Administration ("FmHA") under the Consolidated Farm and Rural Development Act ("CFRDA"), Pub.L. No. 87–128, 75 Stat. 307 (1961) (codified as amended in scattered sections of 7 U.S.C.). They secured their loans through a chattel mortgage on their livestock and machinery. In 1984, purportedly for reasons beyond their control, the Loves defaulted on their loans and filed for bankruptcy. After obtaining a release from the bankruptcy court's automatic stay of proceedings, the FmHA foreclosed, took possession of the Loves' collateral, and sold it.

The Loves filed suit in the District of Montana, contending that the FmHA (a) acted unlawfully because the Loves were eligible for loan deferral under the CFRDA; (b) wrongfully deprived the Loves of their property without any notice or hearing; and (c) improperly seized certain livestock and machinery that were not listed as collateral in the security agreement. The Loves, who originally filed pro se, asserted claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, characterizing them as the following "torts": (a) conversion, (b) breach of fiduciary duty, (c) breach of the implied covenant of good faith and fair dealing, and (d) negligent performance of an undertaking to render services.

The district court, citing this court's decision in *Woodbury v. United States*, 313 F.2d 291 (9th Cir.1963), dismissed the complaint for want of jurisdiction. The court held that the complaint sounded in contract and that exclusive jurisdiction for such actions lies with the United States Claims Court under the Tucker Act, 28 U.S.C. §§ 1346(a), 1491. *Love v. United States*, 656 F.Supp. 847 (D.Mont.1987). On appeal, a split panel of this court distinguished *Woodbury*; cited *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547 (9th Cir.1984), *Walsh v. United States*, 672 F.2d 746 (9th Cir.1982), and a Third Circuit decision, *Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir.1957); and reversed. *Love v. United States*, 871 F.2d 1488 (9th Cir.1989), *amended*, 915 F.2d 1242 (9th Cir. 1990).

Almost simultaneously, a separate panel of this court addressed the same question and, once again by a split decision, reached the opposite result. *LaPlant v. United States*, 872 F.2d 881 (9th Cir.1989). The *LaPlant* panel found the *Woodbury* decision directly on point and distinguished *Fort Vancouver* and *Walsh*. *See* 872 F.2d

at 883–85. Upon rehearing, however, the *LaPlant* panel withdrew its opinion in deference to *Love*, which was the first of the two cases to be submitted and decided. *LaPlant v. United States*, 916 F.2d 1377 (9th Cir.1990).

The full court then entertained and rejected a sua sponte call for rehearing *Love* en banc. Because I believe that this case involves questions "of exceptional importance" and because I believe that the analysis of the original *LaPlant* opinion was correct (for reasons stated both therein and herein), I must dissent from this court's decision to reject en banc rehearing. Fed. R.App.P. 35(a)(2).

## II

### A

The *Love* opinion initially points out that "[u]nder the FTCA, the federal government assumes liability for wrongs that would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred." *Love*, 915 F.2d at 1245 (citing 28 U.S.C. § 2674). Focusing first on the asserted tort of conversion, the opinion then explains that Montana law requires mortgagees and lienholders to give notice to debtors before disposing of secured property. When mortgagees in Montana fail to comply with this requirement, they are liable for the tort of conversion. The opinion concludes that because the FmHA allegedly failed to provide notice to the Loves under the applicable notice provision of the CFRDA, 7 U.S.C. § 1981a, an action lies against the government for this Montana tort. *See id.* at 1246.

I cannot agree. As the *Love* opinion itself points out, the relevant notice requirement is a requirement of *federal* law. *See id.* Whatever statutory notice the FmHA owes the Loves is an obligation imposed upon the agency by the CFRDA, not by the Montana Code. Likewise, whatever *non-statutory* obligations the FmHA bears—whether express or implied—exist purely as a matter of federal law. The

Loves' relationship with the FmHA has no basis in state law whatsoever, and it certainly has no basis in tort.

The rights and duties that bind the Loves and their lender arise under and are governed by three sources: (a) the parties' loan agreement, which is a federal *contract*, (b) the CFRDA, which is the comprehensive federal statute that allows the government to enter that contract and explains the terms by which it may do so, and (c) in the interstices, *federal* common law. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 2513, 101 L.Ed.2d 442 (1988) ("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law."); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 590–94, 93 S.Ct. 2389, 2395–98, 37 L.Ed.2d 187 (1973); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *see also Boyle*, 487 U.S. at 504–05, 108 S.Ct. at 2514. Whatever tort obligations may bind private lenders in Montana are irrelevant to this case; they can have no bearing on a legal relationship grounded in federal law.

If this were not so, every federal assistance program in the nation would be beholden to the individual notice requirements of the fifty states—not to mention all the other contract and tort obligations that are implied under various states' laws. There would be no uniformity in the administration of federal aid, and the effective cost of farm subsidies (and presumably all other forms of federal aid) would surge with increased administrative costs, increased transaction costs, and the concomitant expansion of federal tort liability. The predictable net effect would be fewer dollars for deserving farmers (and other aid recipients), and less certainty in both the markets and the law.

The Supreme Court has recognized and prevented this parade of horribles from occurring in similar contexts. For example, in its landmark decision in *Clearfield Trust*, the Court held that "[t]he rights and duties of the United States on commercial paper which it issues are governed by fed-

eral rather than local [substantive] law." *Clearfield Trust,* 318 U.S. at 366, 63 S.Ct. at 575. The reasoning of the Court's opinion in that case should inform, if not control, our analysis here:

> When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power.... The authority to issue the [commercial paper in question] had its origin in the Constitution and the statutes of the United States and was in no way dependent on the law of Pennsylvania or any other state. *The duties imposed upon the United States and the rights acquired by it as a result of the issuance [of this commercial paper] find their roots in the same federal sources.*
>
> ... [R]easons which may make state law at times the appropriate federal rule are singularly inappropriate here. The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law ... would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain.

*Clearfield Trust,* 318 U.S. at 366–67, 63 S.Ct. at 575 (footnote and citations omitted; emphasis added). The concerns that motivated the Court in *Clearfield Trust* are equally applicable here. Indeed, the notion that a state may impose common-law or statutory tort liability upon the federal government for its handling of a federal

aid program under a comprehensive federal statute contradicts common sense and offends the most basic structural tenets of our form of government. As a jurisprudential matter, the suggestion is unsound; as a practical matter, it is simply unworkable.

### B

For related reasons, I cannot agree with the *Love* court's conclusion that jurisdiction exists for this action under the FTCA. The reasons for my disagreement here are already self-evident. First, the FTCA only waives sovereign immunity and only confers jurisdiction for actions *in tort.* Because the Loves' grievance actually arises under a federal *contract* (and concerns an amount in excess of $10,000), exclusive jurisdiction for their complaint exists in the Claims Court under the Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2), 1491; *LaPlant,* 872 F.2d at 882. Second, as I have already explained, the relevant substantive law here is federal law. Because actions under the FTCA are exclusively governed by *state* substantive law, it follows that jurisdiction is lacking under the FTCA.[1]

### III

### A

To support its contrary view of the law, the *Love* panel attempts to distinguish this court's decision in *Woodbury* and to rely upon our holdings in *Fort Vancouver* and *Walsh.* The panel's reasoning, however, is strained. As Judge Norris artfully explained for the court in *LaPlant* and as the government has argued in its petition for rehearing, *Woodbury* properly controls

---

**1.** Indeed, even assuming for the sake of argument that the Loves' claims are not really contractual in nature and that jurisdiction does not lie under the Tucker Act, it is still clear that jurisdiction cannot lie under the FTCA. So long as federal substantive law controls the relationship, the Loves must bring their claims under a jurisdictional statute that confers power on the courts to adjudicate federal substantive law. In a non-Tucker Act world, therefore, the Loves would presumably have to sue directly under the CFRDA or, perhaps, under the Administrative Procedure Act, 5 U.S.C. § 702, or the general federal-question statute, 28 U.S.C. § 1331. *But see Ashbrook v. Block,* 917 F.2d 918, 925–26

(6th Cir.1990) (holding that there is no private right of action directly under the CFRDA). Moreover, the notion that the CFRDA is a comprehensive statute may independently suggest that it preempts state substantive law and precludes jurisdiction under the FTCA. *Cf. Rivera v. United States,* 924 F.2d 948, 951–52 (9th Cir. 1991) (CSRA precludes litigation of CSRA-based claims under the FTCA because it is a "comprehensive" statute and because "'a precisely drawn, detailed statute pre-empts more general remedies.'") (quoting *Brown v. GSA,* 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976)). In no event would the FTCA apply.

this case and any attempt to distinguish it is uncompelling in my view. *See LaPlant,* 872 F.2d at 883–85.

In *Woodbury,* a real estate developer brought suit against the United States when the Federal Housing Administration allegedly breached a promise to arrange for long-term financing of a government housing construction contract. The developer expressed his cause of action as the tortious breach of fiduciary duty and sued under the FTCA. In affirming dismissal of his claim, a panel of this court held that the action sounded in contract and therefore came within the exclusive jurisdiction of the Claims Court under the Tucker Act. Judge Duniway, writing for a unanimous panel, first noted the irrefutable principle that federal law must govern disputes that arise out of relationships essentially founded upon federal contracts. He then explained:

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and *only incidentally and conceptually* also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act. The notion of such waiver of breach and suit in tort is a product of the history of English forms of action; it should not defeat the long established policy that *government contracts are to be given uniform interpretation and application under federal law,* rather than being given different interpretations and applications depending upon the vagaries of the laws of fifty different states.
>
> \*   \*   \*   \*   \*   \*
>
> Allowing the plaintiff to waive the breach and sue in tort would destroy the distinction between contract and tort preserved in the federal statutes [i.e., the Tucker Act and the FTCA].

*Woodbury,* 313 F.2d at 295–96 (emphasis added).

The *Love* court seeks to distinguish *Woodbury* on the basis of the fact that in this case the government's liability does not depend wholly on an alleged "promise" by the government but "depends in large part on the Loves' claim of ownership and possession of the property" at issue. *Love,* 915 F.2d at 1246. If that is a meaningful distinction, however, then *Woodbury* is a dead letter. The whole point of *Woodbury* is that when the relationship is essentially contractual, as it is in this case, then the plaintiff *must* sue in contract—and hence, under federal substantive law. The fact that a contract claim can also be characterized as a tort claim *conceptually* is not dispositive; it does not mean that alternative characterizations of the claim are interchangeable at the will of an artful pleader. *Woodbury* placed critical weight on the nature of the parties' relationship and on the true source of the actionable duty—not, as the *Love* panel suggests, on its characterization of the government's obligation as a "promise." *See Woodbury,* 313 F.2d at 295–96; *LaPlant,* 872 F.2d at 883–84 (explaining this point).

Even if *Woodbury* were limited to cases involving governmental "promises," however, the rationale of the decision would still control the case at bar. *See id.* at 884. The *Love* court has fundamentally misunderstood this essential point. In its opinion, the court maintains that "the plaintiffs' contract with the government establishes only an underlying element of *the tort,* specifically the mortgagor-mortgagee relationship between the Loves and the government." *Love,* 915 F.2d at 1247 (emphasis added). This reasoning directly contradicts *Woodbury.* Under *Woodbury,* the Loves may not sue in tort *precisely because* of this underlying element. After all, whether the government owes a contractual or a tort-based duty depends on the nature of the parties' relationship. *See id.* at 1249–50 (Carroll, D.J., dissenting). By the court's own admission, the nature of that relationship is contractual; hence, under *Woodbury,* it is irrelevant that the alleged offense can, incidentally, be characterized as a tort. The fact that the *breach* of a duty may be framed in tort is immaterial if the *duty itself* arises in contract.

If the *Love* court's reasoning were correct, then a litigant's ability to characterize his claim in terms of tort law would control. The FTCA would effectively swallow much of the Tucker Act, and the national interest in a uniform treatment of governmental obligations—the interest held so dear in *Woodbury* and *Clearfield Trust* — would be subverted. *See Clearfield Trust,* 318 U.S. at 367, 63 S.Ct. at 575. To swallow much of the Tucker Act is to swallow much of the Claims Court's jurisdiction and, no doubt, to swallow more cases than this court of appeals has either the resources or experience to digest.

Moreover, to allow the FTCA to be read so broadly offends two time-worn principles of statutory construction: (a) the principle that waivers of sovereign immunity should be construed narrowly and (b) the principle that complementary statutes should be read, so far as is practicable, in harmony with one another. *See Bat Rentals, Inc. v. United States,* 479 F.2d 43, 45 (9th Cir.1973) ("It is well established that when a sovereign surrenders its immunity from suit by statute, such a statute must be strictly construed against the surrender of such immunity."); *see also Woodbury* 313 F.2d at 296 ("the Tort Claims Act 'should be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole.' ") (quoting *Feres v. United States,* 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950)). Inherent in the violation of these principles is the erosion of any apparent limit to the statute's reach. If the *Love* court is correct, then the FTCA is a curious and broad abdication of Congressional authority through which states may impose substantive duties on the federal government in the administration of its own aid programs and its own contracts. That, I would submit, is a reading too broad to accept.

## B

The *Love* court cites our earlier decisions *Fort Vancouver* and *Walsh* as authorities for its position, but neither case lends much support. Certainly, neither is as directly on point as *Woodbury.* In *Walsh,* the plaintiff conveyed a highway easement to the government and lost livestock when the government negligently failed to maintain cattle guards along the highway. The court found jurisdiction under the FTCA and distinguished *Woodbury.* In so doing, the court noted that the claim essentially sounded in tort: the terms of the previous conveyance were entirely silent on the issue of whether the government had an obligation to install cattle guards, and it was well settled under state tort law that an easement owner has a duty to prevent unreasonable interferences with the use of a servient estate. *See Walsh,* 672 F.2d at 748–50. In short, the government's duty to Walsh was as a neighboring landowner, not as the party to a contract; the relevant relationship (and corresponding duty) existed in tort. The fact that the parties had *previously* had a contractual relationship concerning the same land was wholly incidental.

In the present case, however, the government has no relevant relationship with the Loves *except* by virtue of the loan agreement, the Loves' federal contract. *See LaPlant,* 872 F.2d at 884. Moreover, the Loves' claims relate entirely to how the government has conducted itself under the terms of that contract. The parties' contractual obligations have not been extinguished and supplanted by a new or different relationship.

*Fort Vancouver* is similarly distinguishable. There, the plaintiff brought suit against the government when a Forest Service slash-burning operation burned out of control and destroyed adjoining timberland, which the plaintiff had earlier purchased from the Service. The court allowed the claim to proceed under the FTCA. Again, the fact that the plaintiff had previously contracted with the government with respect to the land in question was irrelevant; the relevant relationship was that of adjoining landowners—a relationship giving rise to a *Rylands v. Fletcher* -type duty of care sounding in tort. *See Fort Vancouver,* 747 F.2d at 552 ("In this case the contract establishes ownership interests, but other-

wise is not implicated."); *see also LaPlant,* 872 F.2d at 884.

Finally, the *Love* court relies upon the Third Circuit's 1957 decision in *Aleutco Corp. v. United States,* 244 F.2d 674. That reliance, however, is misplaced for two reasons. First, *Woodbury* expressly rejected *Aleutco:* "To the extent that the reasoning in *Aleutco Corp. v. United States* can be said to be contrary to the views here expressed, we decline to follow it." *Woodbury,* 313 F.2d at 296 (citation omitted). Second, like *Woodbury* and unlike *Aleutco,* the present case implicates the "uniquely federal interests" of an ongoing federal funding program. *Boyle,* 487 U.S. at 504, 108 S.Ct. at 2513. The government conduct complained of in *Woodbury* involved actions by the Federal Housing Administration under a National Housing Act construction funding program. Likewise, the conduct complained of here involves actions by the FmHA under an agricultural loan program. The conduct complained of in *Aleutco,* on the other hand, involved the Navy's purported failure to permit the plaintiff to take possession of goods that the latter had purchased—an alleged tortious conversion. The need for the government's obligations to be controlled by federal substantive law is more obvious and much more compelling in the context of a federal funding program than it is in situations like those in *Fort Vancouver, Walsh,* and *Aleutco,* where the government's conduct is less "distinctly public" in nature and much more analogous to that of a private actor. Although the *Woodbury* court rejected *Aleutco's* contrary reasoning, it recognized this important distinction. *See Woodbury,* 313 F.2d at 296–97 (explaining why "we do not think that [*Aleutco*] is really contrary to our views.").

IV

By rejecting rehearing en banc, this court has today substituted state substantive law where federal substantive law must govern. In so doing, we have ignored established principles, set aside controlling precedent, and contradicted sound legal theory on a number of fronts. In one fell swoop, we have undercut the legal community's fundamental understanding of the relationship between (a) tort and contract, (b) federal law and state law, and (c) the Tucker Act and the FTCA.

The ramifications of this decision are immense, both theoretically and practically. To hold that implied covenants, which exist only as a matter of state tort law, are enforceable in federal contracts and federal aid programs through the FTCA does much more than advance the "tortification of contract." *See generally* G. Gilmore, *The Death of Contract* (1974). It erodes the uniformity and predictability of federal contract and administrative law generally, and it undermines the supremacy of federal power. It tells Congress and the President that, despite what they may think when they authorize an aid program or form a contract, there may be innumerable implied duties imposed upon them to which they did not agree. By interposing and enforcing such hidden state law duties, we recognize and endorse the ultimate in contracts of adhesion. I therefore dissent.