Aaron SCHWARDER; Donna Eubanks; Kathleen Schwarder, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 91–55273.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1992.

Decided Sept. 4, 1992.

---

Michael T. Truscott, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Samuel Shore, Law Offices of Samuel Shore, Los Angeles, Cal., Jerry S. Berger,

Law Offices of Jerry Solomon Berger, Beverly Hills, Cal., for plaintiffs-appellees.

Before: ALARCON, NORRIS, and O'SCANNLAIN, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

The United States appeals a judgment for $330,000 in compensatory damages to Aaron Schwarder, Donna Eubanks, and Kathleen Schwarder, (referred to collectively as "the Schwarder children") for the wrongful death of their father, Harry N. Schwarder. The Government contends that the Schwarder children's action was barred by the Federal Tort Claims Act, 28 U.S.C. § 2672, because Harry Schwarder and his wife previously entered into an administrative settlement with the Government in which they received $285,000 and agreed to relinquish any future claims arising out of his injury. The Government also contends that the Schwarder children's award violates California Civil Code § 3333.2, which limits non-economic damage awards in professional negligence actions to $250,000. We affirm.

I

On August 10, 1984, Harry Schwarder sought medical attention at the Loma Linda Veterans Administration Hospital and Clinic (Loma Linda) for a lump on his right knee. As a result of biopsy surgery, physicians at Loma Linda determined that the lump was a malignant tumor which might recur or metastasize. This diagnosis was confirmed by the staff of the Armed Forces Institute of Pathology who recommended wide excision of the area surrounding the tumor. Mr. Schwarder was discharged from Loma Linda on August 21, 1984. Despite the serious nature of his prognosis, he was not informed of the results of his biopsy until more than one year later.

On September 27, 1985, Mr. Schwarder again sought medical attention at Loma Linda because the tumor in his leg had grown back. At that time, he was first advised that he had a cancerous lesion in his leg. Doctors also discovered that the cancer had metastasized to his inguinal lymph nodes and one of his lungs. Mr. Schwarder underwent amputation surgery, chemotherapy, and radiation therapy in an attempt to halt the progress of the cancer. These efforts at treatment were unsuccessful, and he died of cancer on March 28, 1987.

Before his death, Mr. Schwarder, along with his wife, Marlis Schwarder, filed claims for damages against the United States for injuries they had sustained as a result of the failure of the physicians at Loma Linda to diagnose and treat his cancer promptly. After a period of negotiation, they settled these claims for $285,000. As part of this settlement, they executed a Voucher For Payment Under Federal Tort Claims Act. This voucher contained an "Acceptance by Claimant(s)" provision which stated:

> I, (We), the claimant(s), do hereby accept the withinstated award, compromise, or settlement as final and conclusive on me (us) and agree that said acceptance constitutes a complete release *by me (us)* of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter.

(Emphasis added). With the exception of the underlined phrase, the language in the settlement agreement tracks section 2672 of the FTCA, which provides, in relevant part, that:

> The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter.

28 U.S.C. § 2672.[1]

On November 29, 1988, *after* Mr. Schwarder's death, his son, Aaron Schwarder, filed a wrongful death action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, et seq. On October 13, 1989, Mr. Schwarder's two daughters, Donna Eubanks and Kathleen Schwarder, also filed a wrongful death action against the United States pursuant to the FTCA. Both complaints alleged that the negligent medical care administered to Mr. Schwarder by the physicians at Loma Linda was the proximate cause of his death. On March 19, 1990, the district court ordered these actions consolidated for all purposes.

The Government moved for summary judgment, arguing that under a proper interpretation of 28 U.S.C. § 2672, the settlement agreement entered into by Harry and Marlis Schwarder barred any subsequent actions for damages brought by their children. The district court denied the Government's motion. On November 27, 1990, the district court entered a final judgment in favor of the Schwarder children. The district court ruled that the money paid to Harry and Marlis Schwarder as a result of their settlement agreement with the United States could not be considered in the

court's determination of damages due to the Schwarder children under California wrongful death law. Accordingly, the district court awarded Aaron Schwarder $80,000 for loss of support and $150,000 for non-economic damages including the loss of his father's comfort, affection, society, protection and advice. Kathleen Eubanks and Donna Schwarder each received an award of $50,000 for non-economic damages.

We review *de novo* the district court's ruling that 28 U.S.C. § 2672 does not bar the Schwarder children's wrongful death action. *Earles v. United States*, 935 F.2d 1028, 1030 (9th Cir.1991). We also review *de novo* the district court's interpretation of California law. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

## II

 This case began as a wrongful death suit against the United States. Absent a waiver of sovereign immunity, a wrongful death suit against the United States would be barred under the sovereign immunity doctrine. The FTCA does not waive sovereign immunity against *all* wrongful death claims arising from the negligence of United States government officials. Rather, the FTCA waives sovereign immunity only under circumstances

---

**1.** The underlined phrase is consistent, however, with the language in the original version of section 2672 of the FTCA which provided that:

> The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release *by the claimant* of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter.

Act of August 2, 1946, ch. 753, 60 Stat. 812 et seq. (emphasis added). Thus, the current version of section 2672 is *identical* to the 1946 version except that the words "by the claimant" were omitted after the 1948 recodification of the Judicial Code. *See* Act of June 25, 1948, ch. 646, Pub.L. No. 773. As the government concedes, the legislative history surrounding section 2672 is sparse and does not address the purpose, if any, behind this change in the language of the settlement exclusion provision. In the absence of a clear Congressional intent to change the meaning of section 2672, we may not infer a revisionary purpose from a change

in the language of the section alone. As the Supreme Court stated in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989):

> Under established canons of statutory construction, "it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed." Concerning the 1948 recodification of the Judicial Code in particular, we have stated that "no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed."

*Id.* at 554, 109 S.Ct. at 2009 (citations omitted); *cf. United States v. Wilson*, — U.S. ——, ——, 112 S.Ct. 1351, 1355, 117 L.Ed.2d 593 (1992) ("We candidly acknowledge that we do not know what happened to the reference to the Attorney General during the revision [to the statute].... [B]ecause any other interpretation would require us to stretch the meaning of the words that [the statute] now includes, we think it likely that the former reference to the Attorney General was simply lost in the shuffle.").

where a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *See* 28 U.S.C. § 2674. Thus, the FTCA directs us to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity. If the law of that state makes private parties liable for wrongful deaths, then the United States is liable for the same.

■ In this case, the applicable law is California law, which makes a private tortfeasor liable to the children of the deceased for the wrongful death of their parent. *See* Cal.Code Civ.Proc. § 377. Because California law provides for a wrongful death cause of action against private tortfeasors, the FTCA waives sovereign immunity against the Schwarder children's wrongful death action against the United States.

The government does not contest any of this. Rather, the government argues that the Schwarder children's otherwise valid FTCA claim of wrongful death against the United States is barred by the settlement agreement executed between the United States and Mr. & Mrs. Schwarder. The settlement agreement, which we have quoted above, tracks the language in section 2672 of the FTCA.

Without citing any legislative history or relevant case law,[2] the government reads section 2672 as standing for the proposition that an FTCA settlement agreement may bar an otherwise valid FTCA claim by someone other than the claimant who executed the settlement. Our review of forty-plus years of FTCA case law has not revealed a single case in which the United States urged this apparently novel interpretation of section 2672.

The government appears to rely primarily on the language of section 2672, which says a settlement agreement shall constitute a release of *"any* claim ... by reason of the same subject matter."* (Emphasis added). Invoking a plain language theory of statutory construction, the government argues that the phrase "any claim" refers to any claim by reason of the same subject matter regardless of the identity of the claimant. As the government acknowledges, however, "the parameters of the bar created by the 'by reason of the same subject matter' language is governed by the act and/or omission of the employee which initially gave rise to the claim." If we were to adopt the government's theory, we would have little choice but to conclude that a settlement agreement by one claimant bars *any* claim arising from the same act and omission of the employee which gave rise to the initial claim. In other words, if a government vehicle were to crash into an automobile with four passengers who sustained personal injuries and one passenger settled an administrative claim with the government, such a reading of section 2672 would preclude the other passengers from filing suit. Similarly, if a mother were to see her child run over by a negligent government driver, the settlement of the child's action for wrongful injury would destroy an action for emotional distress by the mother. The government

---

**2.** This is a case of first impression in all circuits. The governments' reliance on cases such as *Rodriguez v. Handy,* 873 F.2d 814 (5th Cir.1989); *Arevalo v. Woods,* 811 F.2d 487 (9th Cir.1987) and *Serra v. Pichardo,* 786 F.2d 237 (6th Cir.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986) is misplaced. *Serra, Rodriguez* and *Arevalo* all involved further claims by individuals who had previously obtained damages awards in FTCA actions against the United States. Because *Serra, Arevalo* and *Rodriguez* are concerned exclusively with claims brought by individuals who have already obtained an award of damages from the United States under the FTCA, their holdings do not apply to the Schwarder children's wrongful death action.

The government is also wrong in relying on *Monaco v. United States,* 661 F.2d 129, 134 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982) and *Van Sickel v. United States,* 285 F.2d 87, 91 (9th Cir.1960). *Monaco* and *Van Sickel* involved claims by the heirs of individuals who were barred from recovering damages against the United States under the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (holding that the United States is not liable under the FTCA for injuries to serviceperson where those injuries arise out of or are incident to military service). Those cases held that the *Feres* doctrine precludes claims by the heirs just as it precludes claims by the servicepersons.

readily concedes, however, that such results would be bizarre.

■ The government distinguishes the present case from those hypothetical cases on the ground that the claim here is *derivative* of the claim that was settled. The statute, however, says "any claim," not just "derivative claims." Regardless of whether we decide to read the term "derivative claim" into the statute, it is crystal clear that the government's theory finds no support in a plain language theory of statutory construction.

For purposes of this case, we need not consider whether a settlement under section 2672 operates as a bar to derivative claims brought by claimants who are not parties to the settlement agreement. Even if we assume *arguendo* that derivative claims are barred, the government's argument that the Schwarder children's wrongful death claim is barred by their parents' settlement of their personal injury claim fails. Under applicable California law, the Schwarder children's wrongful death claim is not a derivative claim, but a separate and independent claim.[3]

In arguing that we should consider the Schwarder children's wrongful death claim to be derivative of their parents' personal injury claim, the government contends that whether a claim is derivative of another claim is a federal question that must be decided without reference to the law of the state in which the release was executed. Because, unlike California, some states consider a wrongful death claim to be derivative of a personal injury claim, the government would have us adopt as federal law the rule that a wrongful death claim is derivative of the decedent's personal injury claim.

In essence, the government argues that the meaning of a release of liability under section 2672 of the FTCA is a question of federal, rather than state, law. Our interpretation of section 2672 is, of course, initially a matter of federal law. *McInnes v. California,* 943 F.2d 1088, 1094 (9th Cir. 1991). Some provisions of the FTCA, however, incorporate state law. *See, e.g.,* 28 U.S.C. § 2674. We must determine to what extent Congress intended to make the effect of a section 2672 settlement dependent upon state law.

In *Montellier v. United States,* 315 F.2d 180 (2d Cir.1963), the Second Circuit examined the effect of a pre-injury release not specifically governed by any federal statute. Prior to his injury, the deceased had signed a release agreement in which he agreed to "release ... the Government of the United States and all its officers ... from any and all claims ... on account of [his] death or on account of any injury to [him] or [his] property...." *Id.* at 184 n. 2. In determining the effect of this release on a wrongful death action brought by his children, the Second Circuit looked to state law. The court reasoned that the release was a circumstance which must be taken into account under section 2674, which makes the United States liable to the extent a private person would be liable "under like circumstances." *Montellier,* 315 F.2d at 185. Because the release would not have immunized a private individual

---

3. The government contends that, even if state law governs the scope of section 2672's exclusion of liability, California law does not maintain that a wrongful death action is separate and independent from the injured party's claim. We reject the government's argument that the Schwarder children's wrongful death action is not separate from their parents' action for personal injury under California law. The children's wrongful death claim is created by Section 377 of the California Code of Civil Procedure. *See* Cal.Code Civ.Proc. § 377 (West 1973 & Supp.1992). We have previously held that:

the cause of action granted by Section 377 to the heirs and personal representatives of a decedent is not derivative in character or a continuation or revival of a cause of action existing in the decedent before his death, but is an original and distinct cause of action granted to the heirs and personal representatives of the decedent to recover damages sustained by them by reason of the wrongful death of the decedent.

*Van Sickel,* 285 F.2d at 90. As an extension of this principle, "California does not permit a decedent to compromise by contract his survivors' right to wrongful death recovery. Any limitation based on contract with the decedent, therefore, can have no application against survivors under California law." *In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1306 (9th Cir.1982) (citations omitted).

from a wrongful death action under the applicable state law, the Second Circuit held that it did not bar such an action against the United States.

Our circuit has adopted a similar view of the effect of a pre-injury release on an FTCA claim. In *Air Transport Associates v. United States*, 221 F.2d 467 (9th Cir. 1955), we said:

> The Federal Tort Claims Act specifically adopts the law of the place where an accident occurs as the law in accordance with which liability is to be determined. *This adoption of the proper state law applies not only as to the creation of liability but also as to release from liability.*

*Id.* at 471 (emphasis added).

*Montellier* and *Air Transport*, however, do not control our decision because the releases in those cases were not obtained pursuant to a specific federal statutory provision. By contrast, Harry and Marlis Schwarder obtained an administrative settlement pursuant to 28 U.S.C. § 2672. That section specifically provides that:

> The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States ... by reason of the same subject matter.

■ One of the cardinal rules of statutory construction is that we must, if possible, give effect to all parts of a statute. *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 163, 102 S.Ct. 3014, 3027, 73 L.Ed.2d 664 (1982); *see also United States v. Mehrmanesh*, 689 F.2d 822, 829 (9th Cir.1982). As explained in *Montellier*, *any* agreement between the United States and the injured party would be a relevant circumstance which would bar suit to the extent provided by state law. If the provision quoted above is not to be entirely superfluous, it must be given some additional effect.

■ We conclude, as a matter of federal law, that an administrative settlement reached pursuant to section 2672 bars further claims by the settling party, without regard to the effect it would have as a matter of state law. Such a construction gives meaning to all of section 2672, and effectuates the apparent Congressional intent to provide a uniform procedure, independent of underlying state law, by which the government can settle tort claims against it.

However, we are persuaded that section 2672 does not directly control the effect of a settlement on persons other than the settling party. Because we may not infer a revisionary purpose from unexplained language changes introduced in the 1948 recodification of the Judicial Code, *Finley*, 490 U.S. at 554, 109 S.Ct. at 2009, we read section 2672 to effect a release only "by the claimant" of any claims he or she may have under state law. *See supra* note 1. With respect to the claims of *other* persons, a section 2672 settlement has the same effect as any other release: it is a relevant circumstance which must be taken into account in determining whether the United States is liable under state law.

■ We hold, therefore, that state law governs the question of the effect of a section 2672 release on the claims of persons other than the settling claimant. Congress plainly intended to define the contours of a "tort claim" by reference to state law. *See* 28 U.S.C. § 2674. We think it logically follows that Congress must have necessarily intended to define the *relationship* between *state* tort claims by reference to state law. Moreover, if we were to adopt the government's view that whether one state law claim is derivative of another state law claim is a federal law question, the federal rule of decision would always have to coincide with the law of the state that has the most expansive view of "derivativeness" of claims; otherwise, the United States could find itself liable in states where private individuals are not.[4]

---

**4.** If we were to adopt in any given case, as federal law, the rule that claim X is *not* derivative of claim Y, then we would expose the government to greater liability than private individuals in those states where state law provides that claim X *is* derivative of claim Y. Because

■ The government relies on *Ramirez v. United States*, 567 F.2d 854 (9th Cir. 1977) for the proposition that we ought to interpret all provisions of the FTCA, with the sole exception of section 2674, by reference to federal law. The government reads *Ramirez* too broadly. The sole question in *Ramirez* was whether questions of interpretation under the *exclusion provisions found in section 2680* of the FTCA are controlled by federal law. *Id.* at 855–56. We held they are. *Ramirez*, however, did not speak to questions of interpretation under other FTCA provisions. For good reason. If *Ramirez* had extended its holding to the remaining FTCA provisions, it would have conflicted with the Supreme Court's decision in *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). In *Williams*, our court had interpreted the language "acting in line of duty" in section 2671 of the FTCA[5] by reference to federal law. *Williams v. United States*, 215 F.2d 800, 807–809 (9th Cir.1954). In reversing, the Supreme Court instructed us to interpret the phrase by reference to California law. *Williams*, 350 U.S. at 857, 76 S.Ct. at 100; *see also Williams v. United States*, 352 F.2d 477, 479 (5th Cir.1965). In light of the fact that Congress left the question whether a member of the United States military is acting in line of duty to the vagaries of state law, we decline to impute to Congress the intent to have federal law govern the relationship between two state-created tort claims. Thus, far from winning under *Ramirez*, the government loses under *Williams*.

### III

■ The government also argues that the amount awarded to the Schwarder children for non-economic damages, when combined with the amount awarded to Harry and Marlis Schwarder in their settlement agreement, violates the Medical Injury Compensation Reform Act of 1975 (MICRA), Cal.Civ.Code § 3333.2, which limits the amount of damages for non-economic losses in an action based on medical negligence to $250,000. The government contends that the Schwarder children's award of $250,000 for non-economic damages violated MICRA, because Harry and Marlis Schwarder had already received $285,000 in their administrative settlement for medical negligence.

We reject the government's argument. California Civil Code § 3333.2 provides, in relevant part, that:

(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

(b) In no action shall the amount of damages for non-economic losses exceed two hundred fifty thousand dollars ($250,000).

Cal.Civ.Code § 3333.2(a) & (b) (West 1992). This limitation on noneconomic damages applies to suits against the United States under the FTCA for professional negligence. *Taylor v. U.S.*, 821 F.2d 1428, 1431–32 (9th Cir.1987), *cert. denied*, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); *Hoffman v. United States*, 767 F.2d 1431, 1437 (9th Cir.1985).

In an action for wrongful death based on medical negligence, the California courts have held that section 3333.2's limit of $250,000 refers to the recovery of non-economic damages by all of the plaintiffs *in the aggregate*, and not to the recovery of each individual plaintiff. *Yates v. Pollock*, 194 Cal.App.3d 195, 200, 239 Cal.Rptr. 383, 386 (1987). "[W]hile each injured

---

such a result would be plainly contrary to the mandate of section 2674 of the FTCA which provides that, at a minimum, the government not be exposed to any greater liability than a private individual, we would always have to adopt as federal law the rule that a certain claim is derivative of another claim so long as

at least one state has held that that claim is derivative of another claim.

5. Section 2671 governs the liability of the United States in the case of a tort committed by a member of the military or naval forces of the United States.

plaintiff is entitled to seek non-economic damages, the maximum recovery permitted in any single medical malpractice *action* is $250,000, *regardless of the number of plaintiffs involved." Id.* (emphasis added). The *Yates* court explained the reasoning behind this rule as follows:

> Since the Legislature was obviously aware that "case precedent has consistently held 'only *one action* [can] be brought for the wrongful death of a person thereby preventing multiple actions by individual heirs and the personal representative' ..." and that "the cause of action for wrongful death has been consistently characterized as 'a joint one, a single one and an indivisible one' ..." ... we can but conclude its use of the word "action" in section 3333.2 represents its conscious decision to limit the total recovery for non-economic loss in such suits to $250,000.

*Id.* at 200–01, 239 Cal.Rptr. at 386 (citations omitted). Thus, under California law the Schwarder children as a group could not receive more than $250,000 in non-economic losses for the wrongful death of their father.

Contrary to the government's assertion, however, California law does not require that any portion of the $285,000 awarded to Harry and Marlis Schwarder be counted toward the limit on non-economic damages limit on the Schwarder children's wrongful death action. *Atkins v. Strayhorn*, 223 Cal.App.3d 1380, 273 Cal.Rptr. 231 (1990), involved an action for medical negligence brought by an injured plaintiff and a suit for loss of consortium by the plaintiff's wife. The defendant argued that the combined recovery of the husband and the wife was limited by section 3333.2 to $250,000, because both claims arose from "a single injury-causing incident" of professional negligence. *Id.* at 1394, 273 Cal.Rptr. at 238. The court rejected this argument and held that the husband and wife were each entitled to recover up to $250,000, because the wife's loss of consortium action was independent of the action of her physically injured spouse. *Id.* at 1395, 273 Cal.Rptr. at 239. The court distinguished its holding from that in *Yates* on the ground that

"[w]hile a wrongful death action is a joint, single and indivisible one, loss of consortium is a separate and independent claim from a spouse's claim for personal injury." *Id.*

Applying both *Yates* and *Atkins* to the instant matter, we hold that the recovery obtained by Harry and Marlis Schwarder for the personal injury suffered by him does not limit the recovery of the Schwarder children in their separate action for wrongful death. Accordingly, we conclude that the Schwarder children had a separate limit of $250,000 which was not exceeded by the district court in its damage award.

AFFIRMED.

ALARCON, Circuit Judge, concurring in part and dissenting in part.

The question we must decide in this case is a narrow one. Has Congress procedurally barred the maintenance of a wrongful death action by the decedent's survivors when the deceased or his estate previously settled the claim for physical injuries with the United States? I respectfully dissent from the majority's conclusion that we may imply an intent by Congress to waive the sovereign immunity of the United States against wrongful death actions under such circumstances. To the contrary, in enacting section 2672, Congress precluded an heir's wrongful death claim where the decedent or his or her estate entered into a settlement agreement with the United States. I concur in the majority's conclusion that if the Schwarder children's wrongful death action is proper under section 2672, the amount awarded by the district court does not violate the Medical Injury Compensation Reform Act of 1975 (MICRA), Cal.Civ.Code § 3333.2.

I. *Waiver of Sovereign Immunity— Exclusions are Controlled by Federal Law*

Before discussing the merits of this appeal, we must first consider the law that applies to this case. It is clear that federal law governs all procedural aspects of a claim under the Federal Tort Claims Act

("FTCA"). Under federal law, the plaintiff's claims are procedurally barred.

"Absent a waiver of sovereign immunity, the Federal Government is immune from suit." *Loeffler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); *see also Meyer v. Fidelity Savings*, 944 F.2d 562, 566 (9th Cir.1991) (quoting *Loeffler*). The FTCA constitutes a *limited* waiver of immunity for injuries caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *see also United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976) (noting that the waiver of immunity under the FTCA is subject to various limitations). In determining whether a government employee has engaged in tortious conduct for which the United States has consented to suit, the FTCA provides that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances.*

28 U.S.C. § 2674 (emphasis added). "As this provision makes clear, ... the extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States*, — U.S. —, —, 112 S.Ct. 711, 714, 116 L.Ed.2d 731 (1992).

Although state law governs the scope of the United States' *substantive* tort liability, we must look to federal statutory and common law to determine whether a claim is procedurally barred or excluded under the FTCA. *United States v. Neustadt*, 366 U.S. 696, 705–11, 81 S.Ct. 1294, 1299–1302, 6 L.Ed.2d 614 (1961); *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir.1977) (en banc).

In *Neustadt*, the plaintiffs were induced to purchase a home at a price in excess of the fair market value, based on a negligent inspection and appraisal of the home made by an employee of the Federal Housing Administration (FHA). 366 U.S. at 698–701, 81 S.Ct. at 1296–97. Plaintiffs filed suit against the United States. The district court awarded damages under the FTCA. *Id.* at 701, 81 S.Ct. at 1297. The Government appealed from the judgment on the ground that the claim was barred by 28 U.S.C. § 2680(h), which precludes recovery under the FTCA for " '[a]ny claim arising out of ... misrepresentation.' " *Id.* (quoting 28 U.S.C. § 2680(h)). The Fourth Circuit affirmed the damages award, holding that section 2680(h) did not bar the plaintiff's claim because the misrepresentation in this case was "merely incidental" to the negligent appraisal. 281 F.2d 596, 602 (4th Cir.1960). In so holding, the court relied on the decision of the New York Court of Appeals in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922). *Id.*, at 601. In *Glanzer*, a public weigher was held liable for a negligently inaccurate weigh certificate "not ... merely for careless words but for the careless performance of the act of weighing." *Neustadt*, 281 F.2d at 601.

The Supreme Court reversed the judgment against the United States. 366 U.S. at 711, 81 S.Ct. at 1302. With respect to the Fourth Circuit's reliance on *Glanzer*, the Court commented as follows:

> Whether or not this analysis accords with the law of States which have seen fit to allow recovery under analogous circumstances, it does not meet the question of whether this claim is outside the intended scope of the Federal Tort Claims Act, which depends solely upon what Congress meant by the language it used in § 2680(h).

*Id.* at 705–06, 81 S.Ct. at 1299–1300 (footnote omitted).

In *Ramirez*, we applied *Neustadt* in our interpretation of section 2860(h). 567 F.2d at 856. In determining whether a medical malpractice claim was procedurally barred under the FTCA, we stated the guiding principle as follows: "Questions of interpretation under the exclusion provisions are controlled by federal law." *Id.* (citing *Neustadt*, 366 U.S. at 705–06, 81 S.Ct. at 1299–1300).

In *Woods v. United States*, 720 F.2d 1451 (9th Cir.1983), we stated that in deciding whether certain conduct constituted a

battery, as that term is used in the exclusionary provisions of section 2680(h), we were compelled to apply federal law, and "not what constitutes a battery within the meaning of California law." *Id.* at 1453 n. 2.

The majority holds that *Ramirez* and similar cases must be limited to the interpretation of the exclusion provisions in section 2680 of the FTCA in order to avoid a conflict with the Supreme Court's decision in *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). In *Williams*, the Court vacated a decision of this court interpreting the phrase "acting in the line of duty," found in section 2671 of the FTCA, pursuant to federal law. *Id.* The Court remanded the case with instructions to interpret the phrase according to the California doctrine of *respondeat superior.* Id.

Contrary to the majority's assertion, the application of *Ramirez* to the instant matter does not create a conflict with *Williams.* Section 2671, at issue in *Williams*, is a purely definitional section of the waiver of sovereign immunity under the FTCA. It does not purport to exclude coverage under the FTCA. In contrast, section 2672 contains an express exclusion of liability under the FTCA where the decedent has entered into a settlement agreement.

For reasons that are not totally clear, the majority has cited *Montellier v. United States*, 315 F.2d 180 (2d Cir.1963), and *Air Transport Associates v. United States*, 221 F.2d 467 (9th Cir.1955) in its opinion. As the majority concedes, both *Montellier* and *Air Transport* were concerned with the effect of a pre-injury release of liability by the victim on a subsequent wrongful death action by his survivors. The FTCA does not contain an express provision governing the effect of pre-injury releases on claims by the victim's survivors. In section 2672, Congress explicitly precluded a claim against the United States where the victim of a tort committed by a United States employee settles a claim.

## II. *Exclusion of Certain Tort Claims Under Section 2672*

Having determined that we must look to federal law to determine whether a wrongful death action is procedurally barred under the FTCA because the decedent settled his claim, we first consider the plain language of the statute. If it is ambiguous, we must look to relevant legislative history, federal common law, and accepted principles of statutory construction to determine the intent of Congress. *See Smith v. United States*, 953 F.2d 1116, 1118 (9th Cir.1991) (relying on the language of the statute, federal case law, and legislative history to determine the meaning of the ambiguous term "foreign country" under section 2680(k) of the FTCA).

In determining whether a wrongful death action is excluded by section 2672 from the waiver of sovereign immunity by the United States, we must resolve any ambiguity in the statute in favor of the United States. "It is well established that when a sovereign surrenders its immunity from suit by statute, such a statute must be strictly construed against the surrender of such immunity." *Bat Rentals, Inc. v. United States*, 479 F.2d 43, 45 (9th Cir. 1973); *see also Love v. United States*, 944 F.2d 632, 637 (9th Cir.1991) (same). If the plain words of section 2672 bar the survivors' wrongful death cause of action because Harry Schwarder, the decedent, settled his personal injury claim with the Government, we must reverse the district court. If, on the other hand, the words are not clear, then in determining the intent of Congress we must strictly construe section 2672 to preclude a waiver of sovereign immunity from claims by survivors following a settlement by the person whose physical injuries were directly caused by the tort of an employee of the United States.

Section 2672 provides in pertinent part that "[t]he head of each Federal agency or his designee ... may ... settle any claim for money damages against the United States for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency." Section 2672 also provides that:

The acceptance by the claimant of any ... settlement shall be final and conclusive on the claimant, *and shall constitute a complete release of any claim* against the United States and against the employee of the government whose act or omission gave rise to the claim, *by reason of the same subject matter.*

(emphasis added). Section 2672 makes a settlement "final and conclusive" against an action brought by the claimant for his or her personal injury, or a claim filed by his or her estate if the injury caused death. There is no ambiguity in the prohibition against a claim brought by the person who was physically injured or by his or her estate. Section 2672 also bars any claim "by reason of the same subject matter." The meaning of these words is not clear. The words "by reason of the same subject matter" could be interpreted to bar the bringing of a cause of action for the wrongful death of a person physically injured by an employee of the United States. The same term could also be interpreted to bar only a claim brought by the estate of the decedent, and not to preclude a claim for the separate injury to the members of a person's family that flows from the wrongful death of the decedent.

Mindful of our duty to construe the ambiguous terms of section 2672 against a surrender of sovereign immunity, we must first examine the procedural law regarding the maintenance of a wrongful death claim as it existed in 1948 at the time Congress adopted the bar to the maintenance of "any claim" against the United States after a settlement has been effected. See Act of June 25, 1948, ch. 646, Pub.L. No. 773.

### III. *Survivors' Wrongful Death Claims are Procedurally Barred by Decedent's Settlement*

At common law, a tort victim's cause of action was extinguished upon his or her death. *Higgins v. Butcher,* K.B. 1607, Yelv. 89, 80 Eng.Rep. 61. English common law did not recognize a separate cause of action in the decedent's survivors for wrongful death. *Baker v. Bolton,* N.P. 1808, 1 Camp. 493, 170 Eng.Rep. 1033. These rules became a part of American common law. *See Insurance Co. v. Brame,* 95 U.S. (5 Otto) 754, 756, 24 L.Ed. 580 (1877) ("[A]t the common law no civil action lies for an injury which results in the death of the party injured.") Under this harsh doctrine, a tortfeasor whose conduct caused death was immune from civil liability. If the victim survived, he or she had a cause of action for damages. In 1846, to remedy this injustice, England enacted the Fatal Accidents Act, also known as Lord Campbell's Act which created a separate cause of action for the survivors of a decedent who was the victim of a tort that caused his or her death. 9 & 10 Vict. c. 93. Similar wrongful death statutes were subsequently enacted in every American state. *See* Speiser, *Recovery for Wrongful Death,* Appendix A (2d ed. 1975).

A majority of the state courts that have considered the question have held that a survivor cannot bring a wrongful death action if the decedent was barred from doing so in his lifetime, because the wrongful death claim is essentially derivative of the injury to the decedent. *See* William Prosser & W. Page Keeton, *Law of Torts* § 127 at 955 (footnotes omitted) ("The wrongful death action for the benefit of survivors is, like other actions based on injuries to others, derivative in nature, arising out of and dependent upon the wrong done to the injured person and thus barred when his claim would be barred."). "[A] judgment for or against the decedent in an action for his injuries commenced during his lifetime, or the compromise and release of such an action, will operate as a bar to any subsequent suit founded upon his death." *Id.* (footnotes omitted); *see also Walrod v. Southern Pacific Co.,* 447 F.2d 930 (9th Cir.1971) (applying Arkansas wrongful death law); *Frescoln v. Puget Sound Traction, Light & Power Co.,* 225 F. 441 (D.C.Wash.1915) (applying Washington wrongful death law); *Woodward Iron Co. v. Craig,* 256 Ala. 37, 53 So.2d 586 (1951); *Simmons First Nat'l Bank v. Abbott,* 288 Ark. 304, 705 S.W.2d 3 (1986); *Kling v. Torello,* 87 Conn. 301, 87 A. 987 (1913); *Perry v. Philadelphia, Baltimore & Washington R.R. Co.,* 24 Del. 399, 77 A.

725 (1910); *Variety Children's Hospital v. Perkins*, 445 So.2d 1010 (Fla.1983); *Fountas v. Breed*, 118 Ill.App.3d 669, 74 Ill.Dec. 170, 455 N.E.2d 200 (Ill.App.Ct.1983); *Perry's Adm'r v. Louisville & Nashville R.R. Co.*, 199 Ky. 396, 251 S.W. 202 (1923); *Harris v. Illinois Cent. R.R. Co.*, 111 Miss. 623, 71 So. 878 (1916); *Schmelzer v. Central Furniture Co.*, 252 Mo. 12, 158 S.W. 353 (1913); *Hindmarsh v. Sulpho Saline Bath Co.*, 108 Neb. 168, 187 N.W. 806 (1922); *Kelliher v. New York Cent. & Hudson R.R. Co.*, 212 N.Y. 207, 105 N.E. 824 (1914); *Edwards v. Interstate Chemical Corp.*, 170 N.C. 551, 87 S.E. 635 (1916); *Haws v. Luethje*, 503 P.2d 871 (Okla.1972); *Price v. Richmond & D.R. Co.*, 33 S.C. 556, 12 S.E. 413 (1890); *St. Louis Southwestern Ry. Co. v. Hengst*, 36 Tex.Civ.App. 217, 81 S.W. 832 (1904); *Legg v. Britton*, 64 Vt. 652, 24 A. 1016 (1892); *Virginia Electric & Power Co. v. Decatur*, 173 Va. 153, 3 S.E.2d 172 (1939); *Parsons v. Roussalis*, 488 P.2d 1050 (Wyo.1971).

The majority rule precluding a wrongful death action by the survivors of a tort victim, where the record shows that the decedent entered into a settlement for his injuries, has also been adopted by the federal courts to bar recovery under certain federal statutes. In *Mellon v. Goodyear*, 277 U.S. 335, 48 S.Ct. 541, 72 L.Ed. 906 (1928), for example, the Supreme Court held that a settlement and release of all claims entered into by an injured employee under the Federal Employers' Liability Act, barred a subsequent wrongful death action by his survivors. *Id.* at 344, 48 S.Ct. at 544. The Court explained its decision as follows:

> By the overwhelming weight of judicial authority, where a statute of the nature of Lord Campbell's Act in effect gives a right to recover damages for the benefit of dependents, the remedy depends upon the existence in the decedent at the time of his death of a right of action to recover for such injury. A settlement by the wrongdoer with the injured person, in the absence of fraud or mistake, precludes any remedy by the personal representative based upon the same wrongful act.

*Id.* But see *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (adopting minority rule for cases involving seamen injured in territorial waters).

The rationale for barring a claim for wrongful death if the decedent or his or her estate entered into a settlement is to avoid double recovery for the same tortious conduct. See 4 F. Harper, F. James & O. Gray, *The Law of Torts*, § 24.6 at p. 473 (4th ed. 1986) ("The vital policy behind [this rule] ... is certainly in part the prevention of double recovery."). Allowing a wrongful death action to proceed where the decedent has already settled or recovered for his injuries, gives rise to the possibility that the heirs will receive damages already obtained by the decedent:

> If ... [the] deceased recovers before death, his recovery for permanent injuries will be based, under the prevailing American rule, on his prospective earnings for the balance of his life expectancy at the time of his injury *undiminished by any shortening of that expectancy as a result of the injury* .... The danger of double recovery becomes clear when it is recalled that any monetary benefits of which the survivors were by the death deprived would probably have come out of these very prospective earnings if deceased had lived.... The prevailing rules seem therefore to be justified, at least in the absence of effective safeguards to prevent double recovery.

*Id.* at 475–76 (footnotes omitted) (emphasis in original).

California and six other states have adopted a rule that permits survivors to maintain a cause of action for wrongful death, notwithstanding the fact that the decedent, or his or her estate settled the claim against the tortfeasor. *Blackwell v. American Film Co.*, 189 Cal. 689, 209 P. 999 (1922); *Goodyear v. Davis*, 114 Kan. 557, 220 P. 282 (1923); *Dougherty v. New Orleans Railway & Light Co.*, 133 La. 993, 63 So. 493 (1913); *Alfone v. Sarno*, 87 N.J. 99, 432 A.2d 857, 865 (1981); *De Hart v. Ohio Fuel Gas Co.*, 84 Ohio App. 62, 85 N.E.2d 586 (1948); *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 A. 663 (1936);

*Rowe v. Richards*, 35 S.D. 201, 151 N.W. 1001 (1915). The state courts that have adopted this minority rule "have either ignored or brushed aside the double liability problem." *Alfone*, 432 A.2d at 866.

To permit a wrongful death action under the FTCA where the facts show that the decedent settled his or her claim for physical injuries, we would have to presume that Congress intended to reject the majority rule that precludes such actions when it stated in section 2672 that "[t]he acceptance by the claimant of any ... settlement ... shall constitute a complete release of any claim ... by reason of the same subject matter." These words, when viewed in light of the majority rule, would appear to compel precisely the opposite conclusion. Assuming, however, that the meaning of these words is ambiguous, the Supreme Court has instructed that we must strictly construe the statutory language in favor of preserving the sovereign immunity of the United States.

By applying California law in its interpretation of section 2672, the majority has confused the FTCA's requirement that a state's substantive tort law be applied, with the requirement that federal law must be followed in determining whether a claim is excluded or procedurally barred. *Neustadt*, 366 U.S. at 705–06, 81 S.Ct. at 1299–1300; *Ramirez*, 567 F.2d at 856. The majority's holding also exposes the United States to different procedural requirements depending on the state in which the tort occurred. This result violates the well-established policy that procedural rules fashioned by federal courts must be uniformly applied. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 157 n. 18, 105 S.Ct. 3085, 3098 n. 18, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) (" 'Where the courts are required themselves to fashion a federal rule of decision, the source of that law must be federal and uniform.' " (quoting *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 426 F.Supp. 316, 325 (N.D.Ind.), *modified on other grounds*, 567 F.2d 692 (7th Cir.1977)).

The district court concluded that section 2672 permits survivors to file a wrongful death action, notwithstanding the settlement by the decedent, based on its concern that a contrary conclusion would preclude other persons who were physically injured by the same tortious conduct from recovering damages if one of the victims entered into a settlement agreement. The district court posed this hypothetical question. Suppose 25 persons are injured when a postal truck hits a bus. Would section 2672 as interpreted by the Government bar recovery by the other passengers where one passenger had already settled? The district court persuaded itself that such a result would follow if it held that wrongful death claims by the heirs of an injured person who settled his or her claim were barred. In reaching this conclusion, the district court confused a wrongful death action which, although a separate tort, is a claim that arises solely from the tortious conduct that physically injured *the decedent*, with claims for direct physical injuries simultaneously suffered by more than one person as a result of the same tortious conduct. The majority rule in this country bars recovery for wrongful death if the decedent has settled his or her claim. No state or jurisdiction, however, has purported to bar recovery for persons who were physically injured by the same tortious conduct. I am sure that this court would reject that absurd result if ever the argument were made. We are precluded from interpreting the words used by Congress so as to give them a distorted meaning. *Public Citizen v. Department of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989).

Application of the majority rule which precludes a wrongful death claim by survivors where the decedent has settled his personal injury claim would protect the United States from paying twice for physical injuries to one person. Under the majority rule, the survivors of a tort victim would not be able to recover for the lost support of the decedent, where the decedent had already received compensation for any lost wages that would have contributed to the support of his or her survivors. Because Congress has not expressly adopted the minority rule, we are required to conclude that Congress did not intend to allow a double recovery in the absence of an express waiver of such liability.

## Conclusion

I would reverse the district court's conclusion that section 2672 permits the heirs of a decedent who previously settled his or her claim, to file a wrongful death claim. I would construe the exclusion contained in section 2672 as a reflection of Congress' intention (1) to have the same procedures apply uniformly in each FTCA action in every state, (2) to limit the waiver of sovereign immunity, and (3) to bar double recovery against the United States by applying the majority rule that precludes an heir from prosecuting a wrongful death action if the decedent settled his or her claim. To reach the result reflected in the majority's opinion, we must ignore well-established rules governing statutory construction, construe ambiguous language *in favor of* a waiver of sovereign immunity by the United States, and conclude that Congress intended *sub silentio* to adopt the minority rule concerning the effect of a settlement upon a wrongful death claim, and thereby expose taxpayers to the risk of paying twice for the same tortious conduct. I am unwilling to presume that Congress would intend such folly.